

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-1-2005

# Mendez-Reyes v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 04-4522

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

## Recommended Citation

"Mendez-Reyes v. Atty Gen USA" (2005). *2005 Decisions.* Paper 193.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/193

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

NO. 04-4522
_____

GILBERTO MAUEL MENDEZ-REYES,
Petitioner
v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

_____

On Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA No. A92-168-205)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 20, 2005

BEFORE: SCIRICA, <u>Chief Judge</u>, VAN ANTWERPEN
and ALDISERT, <u>Circuit Judges</u>

(Filed: November 1, 2005)

Regis Fernandez, Esq.
18 Green Street, Third Floor
Newark, NJ 07102

*Counsel for Petitioner*

Mary Jane Candaux, Esq.
Douglas E. Ginsburg, Esq.
James E. Grimes, Esq.
John M. McAdams, Jr., Esq.
U. S. Department of Justice
Office of Immigration Litigation
P. O. Box 878
Ben Franklin Station
Washington, DC 20044-0878

*Counsel for Respondent*

---

OPINION

---

VAN ANTWERPEN, <u>Circuit Judge</u>

Only a brief recitation of the relevant facts is necessary in this case. Petitioner Gilberto Mendez-Reyes ("Petitioner"), a citizen of Mexico, claims that he has been residing in the United States since 1985. He also claims that he took a brief trip to Mexico in May, 1998. Upon arriving on an international flight at Newark Airport on May 16, 1998, he was encountered by immigration authorities, who referred him for secondary

inspection, which was to take place on July 28, 1998. At his secondary inspection, Petitioner withdrew his application for admission to the United States and departed the country. He reentered in August of 1998, and removal proceedings based on his unlawful reentry were initiated on September 6, 2002.

At these removal proceedings, Petitioner conceded that he was removable under 8 U.S.C. § 1182(a)(6)(A)(I) and applied for cancellation of removal. Relief in the form of cancellation of removal is within the discretion of the Attorney General pursuant to 8 U.S.C. § 1229b(b)(1). In order to qualify, the applicant must establish, among other things, continuous physical presence in the United States for at least 10 years immediately preceding the date of the application. 8 U.S.C. § 1229b(b)(1)(A). By oral decision dated September 5, 2003, the Immigration Judge ("IJ") determined that Petitioner could not establish 10 years of continuous physical presence because of the withdrawal of his application for admission and subsequent departure on July 28, 1998.[1] For the reasons set forth below, we find no error in the IJ's decision, and we will deny the Petition.

I.

This Court generally lacks jurisdiction to review discretionary decisions made under § 1229b regarding

---

[1] Where, as here, the Board of Immigration Appeals ("BIA") merely adopts the decision of the IJ, this Court reviews the IJ's opinion on petition for review. *See Abdulai v. Ashcroft*, 239 F.3d 542, 549 n.2 (3d Cir. 2001).

cancellation of removal. 8 U.S.C. § 1252(a)(2)(B)(I). However, under the Real ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, our jurisdiction is expanded to consider "constitutional claims or questions of law" notwithstanding the jurisdictional limitations of § 1252(a)(2)(B). 8 U.S.C. § 1252(a)(2)(D); *Papageorgiou v. Gonzales*, 413 F.3d 356, 357-58 (3d Cir. 2005). Petitioner raises two related questions of law that are properly before us pursuant to § 1252(a)(2)(D): (1) whether the IJ erred in finding that the withdrawal of an application for admission constitutes a break in physical presence for the purposes of § 1229b(b)(1)(A); and (2) whether *In re Romalez-Alcaide*, 23 I & N Dec. 423 (BIA 2002), the agency decision on which the IJ relied, is entitled to deference under *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984).

The government raises an additional jurisdictional argument, claiming that Petitioner's claims are rendered moot by his failure to abide by a voluntary departure order. In the underlying immigration proceedings, Petitioner applied for voluntary departure as an alternative to cancellation of removal. The BIA's November 10, 2004, order affirmed the IJ's denial of cancellation of removal and granted voluntary departure. The BIA ordered Petitioner to depart "within 30 days from the date of this order." The order also advised Petitioner of the consequences of failing to timely depart, which are set forth in 8 U.S.C. § 1229c(d): "If an alien is permitted to depart voluntarily under this section and fails to voluntarily depart the United States within the time period specified, the alien shall be . . . ineligible for a period of 10 years for any further relief under this section and section[] 1229b. . . ."

The government asserts that Petitioner failed to timely depart by December 10, 2004, and argues that Petitioner is now statutorily ineligible for cancellation of removal under § 1229c(d), thus mooting the petition for review of the agency's

4

cancellation of removal decision. *Cf. County of Morris v. Nationalist Mvmt.*, 273 F.3d 527, 533 (3d Cir. 2001) ("The mootness doctrine is centrally concerned with the court's ability to grant effective relief."); *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698-99 (3d Cir. 1996) ("[I]f developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot.").

The agency has not had the opportunity to address the effect, if any, that Petitioner's apparent failure to timely depart may have on his previous application for cancellation of removal. As such, the record contains no facts pertaining to Petitioner's compliance (or non-compliance) with the statutory and regulatory requirements of voluntary departure, and we are ill-equipped as an appellate court to determine in the first instance whether § 1229c(d) is a bar to relief in this case.[2] Because we cannot be certain based on the record before us whether § 1229c(d) is applicable in this case, we cannot agree with the government that the requested relief (remand for further

---

[2]There may be issues which are not before us. For example, an alien granted voluntary departure must post a voluntary departure bond. 8 CFR § 1240.26(c)(3). "If the bond is not posted within 5 business days, the voluntary departure order *shall vacate automatically* and the alternate order of removal will take effect on the following day." *Id.* (emphasis added). If, for the sake of argument, Petitioner had failed to post bond, he would be subject to a removal order, not a voluntary departure order, and Petitioner might argue that he did not overstay a voluntary departure period at all. We express no opinion on the validity of such an argument, but only note that such issues might arise in determining the impact of § 1229c(d), and these issues would be best left for the agency's initial consideration.

5

consideration of Petitioner's cancellation of removal claim) will be ineffective as a matter of law. Therefore, were we to conclude on the merits that the IJ's grounds for initially denying cancellation of removal were legally incorrect, we would remand for the agency to consider the government's arguments under § 1229c(d) in the first instance.

## II.

All of the foregoing being said, we find that Petitioner's allegations of legal error by the IJ are without merit, and further consideration of this case by the agency is thus unnecessary. In reviewing the merits of Petitioner's claims, this Court reviews the agency's conclusions of law *de novo*, "subject to established principles of deference." *Wang v. Ashcroft*, 368 F.3d 347, 349 (3d Cir. 2004) (citing *Chevron*, 467 U.S. 837). We apply substantial evidence review to agency findings of fact, departing from factual findings only where a reasonable adjudicator would be compelled to arrive at a contrary conclusion. 8 U.S.C. § 1252(b)(4)(B). Applying these principles, we hold that the agency's ruling in *Romalez-Alcaide*, 23 I & N Dec. 423, is entitled to deference and that the IJ correctly applied that ruling in this case.

## A.

As noted, an alien applying for cancellation of removal must establish at least ten years of continuous physical presence in the United States under § 1229b(b)(1)(A). Section 1229b(d) sets forth two situations in which continuous presence is deemed to have been broken. First, physical presence "shall be deemed to end . . . when the alien is served a notice to appear under section 1229(a) of this title," or when the alien has committed a criminal offense referred to in 8 U.S.C. §§ 1182(a)(2), 1227(a)(2), or

6

1227(a)(4).  8 U.S.C. § 1229b(d)(1).  The second situation is set forth in § 1229b(d)(2):

> (2) Treatment of certain breaks in presence
>
> An alien shall be considered to have failed to maintain continuous physical presence in the United States under subsections (b)(1) and (b)(2) of this section if the alien has departed from the United States for any period in excess of 90 days or for any periods in the aggregate exceeding 180 days.

8 U.S.C. § 1229b(d)(2).

In *Romalez-Alcaide*, the BIA held that continuous physical presence is also broken when the alien voluntarily departs under the threat of deportation.  23 I & N Dec. at 429.  In determining whether this holding is entitled to deference, we must first determine whether Congress has "directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842.  "If Congress has done so, the inquiry is at an end; the court 'must give effect to the unambiguously expressed intent of Congress.'" *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000) (quoting *Chevron*, 467 U.S. at 843).

Petitioner argues that § 1229b(d) sets forth the only conditions under which continuous physical presence is broken and contains the "unambiguously expressed intent of Congress" that departures not exceeding the 90/180 day period shall not be deemed to break physical presence.  Petitioner thus claims that the BIA improperly "introduce[d] an additional requirement not enacted by statute," (Brief for Petitioner at 22), by holding that voluntary departure under the threat of removal constitutes a break in physical presence

7

regardless of whether the resulting departure exceeds the 90/180 day period.

We disagree. Section 1229b(d) sets forth various circumstances under which continuous physical presence *must* be deemed to have been broken, but it does not by its terms provide the exclusive definition of break in physical presence. The statute does not further define "continuous physical presence," and it is silent as to whether there are additional circumstances under which continuous physical presence *may* be broken. In other words, the fact that Congress has declared that a departure of more than 90 days *shall* constitute a break in physical presence does not necessarily mean that departures of less than 90 days *shall not* constitute a break in physical presence. Thus, Congress has remained silent on the precise issue presented in both this case and *Romalez-Alcaide*: whether a departure of less than 90 days can ever create a break in physical presence.

In the absence of statutory language addressing the precise issue at hand, we move to the second step of the *Chevron* analysis to determine whether the agency has adopted a permissible construction of the statute. 467 U.S. at 843. Applying this standard in the immigration context, this Court has noted, "In light of the INA's enormously broad delegation to the Attorney General, we would be extremely reluctant to hold that his interpretation [of the INA] is unreasonable." *Abdulai v. Ashcroft*, 239 F.3d 542, 552 (3d Cir. 2001).

The Ninth Circuit in *Vasquez-Lopez v. Ashcroft*, 343 F.3d 961, 972 (9th Cir. 2003) succinctly summarized the BIA's reasoning in *Romalez-Alcaide* as follows:

8

[The BIA] explained that "an order of removal is intended to end an alien's presence in the United States." [*Romalez-Alcaide*, 23 I & N Dec.] at 426. For that reason, it seemed clear to the court that Congress did not intend for aliens who departed pursuant to an order of removal to be able to return within 90 days and continue to accrue continuous physical presence. Given that administrative voluntary departures were in lieu of removal proceedings and the entry of such orders, it followed that administrative voluntary departures should likewise be seen as severing the alien's physical tie to the United States.

*Vasquez-Lopez v. Ashcroft*, 343 F.3d 961, 972 (9th Cir. 2003). In relying on the fact that voluntary departure is granted "in lieu of removal proceedings," the BIA likened the process of being granted voluntary departure to the quid pro quo of plea bargaining:

The alien leaves with the knowledge that he does so in lieu of being placed in proceedings. The clear objective of an enforced departure is to remove an illegal alien from the United States. There is no legitimate expectation by either of the parties that an alien could illegally reenter and resume a period of continuous physical presence.

*Romalez-Alcaide*, 23 I & N Dec. at 429. Against this background, the BIA held that it would be against congressional intent[3] to allow an alien who accepted the

---

[3] The BIA determined that the 1996 amendments to the INA evidenced a congressional intent "to deter illegal immigration to

9

privileges of voluntary departure in lieu of removal proceedings to continue to accrue continuous physical presence under § 1229b after illegally reentering the country, just because he managed to do so within 90 days. *Id.*

We join every other court of appeals that has addressed the issue in holding that the BIA's application of § 1229b in *Romalez-Alcaide* constitutes a permissible construction of the statute. *See Morales-Morales v. Ashcroft*, 384 F.3d 418, 427 (7th Cir. 2004); *Palomino v. Ashcroft*, 354 F.3d 942, 944-45 (8th Cir. 2004); *Mireles-Valdez v. Ashcroft*, 349 F.3d 213, 218 (5th Cir. 2003); *Vasquez-Lopez v. Ashcroft*, 343 F.3d 961, 972-74 (9th Cir. 2003).

B.

We find no error in the IJ's application of the holding in *Romalez-Alcaide* to Petitioner's application for cancellation of removal in this case. Petitioner argues that withdrawal of an application for admission should not be treated the same as voluntary departure for the purposes of calculating continuous physical presence. He asserts that, unlike voluntary departure, withdrawal of an application for admission involves a unilateral choice on the part of the alien, which can be made at any time. Therefore, according to Petitioner, his unilateral decision cannot be likened to a plea bargain in order to avoid removal proceedings in the same way that voluntary departure can.

---

the United States by curbing the incentive for aliens to extend their stays in this country and prolong their cases in order to gain immigration benefits." *Romalez-Alcaide*, 23 I. & N. Dec. at 429.

On the contrary, however, whether an alien is granted permission to withdraw an application for admission is "in the discretion of the Attorney General," 8 U.S.C. § 1225(a)(4), and it is therefore not merely a unilateral decision on the part of Petitioner. In addition, the signed document in which Petitioner withdrew his application for admission stated, "I understand that my voluntary withdrawal of my application for admission *is in lieu of a formal determination concerning my admissibility*." A.R. 118 (emphasis added). Therefore, Petitioner's acquisition of permission to withdraw his application is identical to being granted voluntary departure insofar as Petitioner obtained that permission in order to avoid the perils of removal proceedings.

Finally, Petitioner claims that he was not actually "under threat of deportation" because his removability has never been established. He asserts that, by merely withdrawing his application for admission, he did not concede removability. However, had Petitioner even allowed immigration proceedings to be initiated against him in 1998, his continuous physical presence would have been automatically terminated under § 1229c(d)(1). Rather than allow this to happen, Petitioner agreed to withdraw his application for admission and depart the country immediately. Just as with a voluntary departure, neither the government nor Petitioner himself could have a "legitimate expectation . . . that [he] could illegally reenter and resume a period of continuous physical presence." *Romalez-Alcaide*, 23 I & N Dec. at 429. And just as in the case of voluntary departure, Petitioner should not be able to benefit from the fact that he managed to illegally reenter the United States before the 90-day time frame expired under § 1229c(d)(2).

III.

11

For the foregoing reasons, we will deny the Petition for Review.