**Maritza RAMOS DE HERRERA,**
**Petitioner**

**v.**

**ATTORNEY GENERAL OF**
**the UNITED STATES.**

No. 08–3683.

United States Court of Appeals,
Third Circuit.

Submitted Pursuant to Third Circuit
LAR 34.1(a) Dec. 16, 2009.

Filed: Dec. 21, 2009.

---

Francis X. Geier, Esq., Anayancy R. Housman, Esq., Law Office of Anayancy R. Housman, Elizabeth, NJ, for Petitioner.

Aliza B. Alyeshmerni, Esq., Richard M. Evans, Esq., Joan E. Smiley, Esq., United States Department of Justice Office of Immigration Litigation, Washington, DC, for Attorney General of The United States.

Before: RENDELL, FISHER and GARTH, Circuit Judges.

## OPINION OF THE COURT

### PER CURIAM.

Maritza Ramos De Herrera ("Ramos"), a thirty-four-year-old native and citizen of Guatemala, seeks review of a final order of removal entered by the Board of Immigration Appeals ("BIA"). We will deny the petition for review.

### I.

Ramos entered the United States in 1994 without inspection, and filed an application for asylum at that time. In 2006, the government served a Notice to Appear, and Ramos filed an updated asylum application. At a hearing before an Immigration Judge ("IJ"), Ramos conceded removability as an alien present without being admitted or paroled, and she pursued applications for asylum, withholding of removal, relief under the Convention Against Torture ("CAT"), and cancellation of removal under 8 U.S.C. § 1229b(b)(1). The IJ denied relief, finding that Ramos failed to meet her burden of proof, but granted voluntary departure.

The BIA affirmed, issuing its own decision. The BIA explained that Ramos sought asylum based on a claim that she suffered past persecution on account of her membership in a particular social group, which she defined as "young Guatemalan females targeted for recruitment by the guerillas and who suffered persecution of a sexual nature if they refused to assist the guerillas." While the evidence showed that Ramos was harassed and threatened by guerillas in Guatemala, she was never harmed physically or sexually, and thus the BIA concluded that Ramos is not a member of the group she is attempting to define, and that, furthermore, the alleged group lacks social visibility. The BIA held that Ramos failed to provide sufficient evidence that the threats she received rose to the level of persecution. The BIA also found insufficient evidence of a well-founded fear of future persecution. Even assuming that Ramos could establish the existence of her particular social group, the BIA held that Ramos is not currently a member of that group because she has matured in age since 1994, was never harmed by the guerrillas, and has not es-

tablished that females of her age face the same threats as females of grade school age. The BIA also held that Ramos failed to meet the more stringent burden of proof for withholding of removal, and did not establish under the CAT that she more likely than not faces torture in Guatemala.

Finally, the BIA held that Ramos did not meet her burden of proof for cancellation of removal, which she sought based on a claim that her six-year-old United States citizen son would suffer "exceptional and extremely unusual hardship" if removed. The BIA noted the record evidence of diminished educational opportunities, poor health care, a lower living standard, and crime in Guatemala, and also considered the child's relative youth, ability to speak Spanish, good health, and family support in Guatemala. Based on this evidence, the BIA held that Ramos did not show an exceptional and extremely unusual hardship. Ramos timely filed a petition for review in this Court.

## II.

We first consider our jurisdiction. We have jurisdiction to review the BIA's final order of removal, including the denials of asylum, withholding of removal, and CAT relief. See 8 U.S.C. § 1252(a)(1). However, despite Ramos's argument to the contrary, we lack jurisdiction to review the denial of cancellation of removal under § 1229b(b)(1). "This Court generally lacks jurisdiction to review discretionary decisions made under § 1229b regarding

cancellation of removal." Mendez–Reyes v. Att'y Gen., 428 F.3d 187, 189 (3d Cir. 2005) (citing 8 U.S.C. § 1252(a)(2)(B)(i)). We have held that a determination regarding the "exceptional and extremely unusual hardship" requirement is a "quintessential discretionary judgment." Mendez–Moranchel v. Ashcroft, 338 F.3d 176, 179 (3d Cir.2003). Jurisdiction is retained in such cases only to consider "constitutional claims or questions of law." 8 U.S.C. § 1252(a)(2)(D).

◼ Ramos contends that she raises a "question of law" because the BIA held her claim to a "heightened legal standard" by "ignor[ing] the cumulative effect" of the hardships that her son would face. A review of Ramos's briefing, however, reveals that her argument amounts to no more than an attempt to reargue the persuasiveness of the hardship evidence. Such an argument is not exempt from the jurisdictional bar. See Mendez–Moranchel, 338 F.3d at 179 ("[W]e lack jurisdiction to review the issue Mendez presents on appeal—whether the [BIA] and [IJ] were correct in determining that he does not meet the hardship requirements for cancellation of deportation."). We see no indication that the BIA applied an incorrect legal standard here, and the BIA cannot be said to have applied an impermissibly "heightened" standard merely because it chose to deny relief after considering the record evidence before it.[1] Thus, we lack jurisdiction to review the denial of cancellation of removal.

---

1. The BIA cited and relied upon the standards set forth in In re: Gonzalez Recinas, 23 I. & N. Dec. 467 (BIA 2002) (en banc), In re: Andazola–Rivas, 23 I. & N. Dec. 319 (BIA 2002) (en banc), and In re: Monreal–Aguinaga, 23 I. & N. Dec. 56 (BIA 2001). After considering the relevant factors identified in these cases, the BIA concluded: "While adjusting to life in Guatemala may be difficult for [Ramos]'s son, his youth, health, ability to communicate in Spanish, and access to family

should help him through his adjustment period." Ramos contends that the BIA in effect required her to show that removal would work an "unconscionable" hardship on her son. However, nothing in the BIA's decision indicates that it deviated from its established standards or required a showing from Ramos beyond that normally required to establish an "exceptional and extremely unusual hardship." Indeed, the BIA's decision is consistent with In re: Monreal–Aguinaga, which

## III.

Turning to the removal order, where, as here, the BIA rendered its own decision, we review the BIA's decision, not the IJ's decision.[2] *See Wong v. Att'y Gen.*, 539 F.3d 225, 230 (3d Cir.2008). "The BIA's conclusions regarding evidence of past persecution and the well-founded fear of persecution are findings of fact," reviewed solely for "substantial evidence." *Chavarria v. Gonzalez*, 446 F.3d 508, 515 (3d Cir.2006). Under the deferential substantial evidence standard, the BIA's findings "must be upheld unless the evidence not only supports a contrary conclusion, but compels it." *Abdille v. Ashcroft*, 242 F.3d 477, 484 (3d Cir.2001).

▮ We first address Ramos's asylum claim. The Attorney General may grant asylum if the alien establishes that she is a "refugee," which requires the alien to prove that she was persecuted in the past or has a well-founded fear of future persecution due to, inter alia, membership in a particular social group. 8 U.S.C. § 1158(b)(1)(B)(i). A "particular social group" refers to "a group of persons all of whom share a common, immutable characteristic." *Lukwago v. Ashcroft*, 329 F.3d 157, 171 (3d Cir.2003) (quotation marks omitted). "[W]hatever the common characteristic that defines the group, it must

be one that members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences." *Id.* (quotation marks omitted).

Ramos argues that the BIA erred in failing to recognize that she was subjected to past persecution based on membership in a particular social group ("young Guatemalan females targeted for recruitment by the guerillas and who suffered persecution of a sexual nature if they refused to assist the guerillas"), and that she is therefore entitled to a presumption of future persecution. The record, however, does not compel a conclusion contrary to that reached by the BIA.

As the BIA observed, the group that Ramos attempts to define comprises females who suffered sexual abuse or harm if they refused assistance to the guerillas. But Ramos does not claim that she was harmed physically or sexually.[3] In 1986, when she was age twelve, guerillas began verbally harassing and threatening Ramos as she left school each day, claiming that they would kill Ramos and her family if they refused support for the guerillas. Ramos claims that the guerillas forced some of her schoolmates to serve as prostitutes, and that they were raped and tortured. Ramos quit high school and remained in fear of the guerillas even after she married in 1990.[4] Ramos fears re-

---

holds that, to establish "exceptional and extremely unusual hardship," an alien must show that the qualifying relative would suffer hardship "substantially beyond" that which would be expected to result from removal. 23 I. & N. Dec. at 60.

2. Ramos's suggestion that the BIA "adopted" the IJ's decision is not supported by the record. The BIA clearly conducted its own analysis, and thus our review is limited to the BIA's decision.

3. The BIA did not make a determination that Ramos lacked credibility (nor did the IJ), and

thus we treat Ramos's testimony as credible. *See* 8 U.S.C. § 1158(b)(1)(B)(iii) ("[I]f no adverse credibility determination is explicitly made, the applicant or witness shall have a rebuttable presumption of credibility on appeal.").

4. Ramos married in Guatemala but has since separated from her husband, who also came to the United States and was placed in removal proceedings. Notably, Ramos asserts in her briefing that her husband was "once shot by the guerillas," but this appears to misstate the record. In her testimony before the IJ, Ramos stated that the guerillas once "fol-

turning to Guatemala because "people" will know that she was in the United States, and that she will be kidnapped or killed. This record simply does not compel a finding that Ramos is or was a member of the group that she seeks to define (assuming, arguendo, that Ramos's proposed group could qualify as a "particular social group" for asylum purposes).

■ Ramos argues that the threats she endured rise to the level of past persecution because "the threats against [her] were sufficiently imminent and serious." This Court has held that "unfulfilled threats must be of a highly imminent and menacing nature in order to constitute persecution." *Li v. Att'y Gen.*, 400 F.3d 157, 164 (3d Cir.2005). Our review of the record does not compel a finding that the threats against Ramos rise to this level. Although the threats that Ramos received are troubling, they were not "sufficiently imminent or concrete . . . to be considered past persecution." *Id.* at 165 (rejecting claim that threats of physical mistreatment, detention, or sterilization amounted to past persecution where neither the alien nor members of his family were actually imprisoned, beaten, sterilized, or otherwise physically harmed); *see also Chavarria*, 446 F.3d at 518 ("[W]e have refused to extend asylum protection for threats that, while sinister and credible in nature, were not highly imminent or concrete or failed to result in any physical violence or harm to the alien."). Further, because Ramos failed to establish past persecution, the BIA correctly held that she was not entitled to a presumption of a well-founded fear of future persecution.

■ Finally, Ramos claims that the BIA erred in failing to grant CAT relief.[5] Ramos alleges that she will likely be tortured or killed in Guatemala by "guerillas or by members of other criminal groups," "especially when the criminal elements realize that she has been in the United States and will think that she is wealthy." To be eligible for withholding of removal under the CAT, Ramos had to show that it is more likely than not that she would be tortured in Guatemala. *See* 8 C.F.R. § 208.16(c)(2); *Sevoian v. Ashcroft*, 290 F.3d 166, 174–75 (3d Cir.2002). Torture is defined as the intentional infliction of severe pain or suffering "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1). "In order to constitute torture, an act must be *specifically intended* to inflict severe physical or mental pain or suffering." *Pierre v. Att'y Gen.*, 528 F.3d 180, 186 (3d Cir.2008) (en banc). That act must be " 'inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.' " *Id.* at 189 (quoting 8 C.F.R. § 208.18(a)(1)). It is not enough for public officials to be "willfully blind" to torturous acts; the officials must "have the goal or purpose of inflicting severe pain or suffering." *Id.* at 190.

The record here does not compel a finding that Ramos more likely than not will be tortured by guerillas or members of other groups, or that the Guatemalan government would turn a blind eye to such activity. Although the 2006 State Department Report in the record indicates that

---

lowed [her husband] and they shot *at* him." A82 (emphasis added). There is no evidence that the guerillas ever shot her husband.

5. Although Ramos suggests in passing in her opening brief that the BIA erred in rejecting

her application for withholding of removal under 8 U.S.C. § 1231(b)(3)(A), she sets forth no argument on the issue. We deem this issue waived and do not address it. *See Lie v. Ashcroft*, 396 F.3d 530, 532 n. 1 (3d Cir. 2005).

crime remains a widespread problem in Guatemala, Ramos points us to no record evidence that uncontrolled "criminal elements" in Guatemalan society are likely to torture a national returning from the United States because they perceive her as wealthy.

## IV.

For the foregoing reasons, we will deny the petition for review.