John RENDON, Petitioner

v.

ATTORNEY GENERAL OF
the UNITED STATES,
Respondent.

No. 09–3110.

United States Court of Appeals,
Third Circuit.

Submitted on Respondent's Motion for
Summary Action
Under 3rd Cir. LAR 27.4 and

Chapter 10.6 of the Court's Internal
Operating Procedures March 11, 2010.

Opinion Filed: March 16, 2010.

Francis X. Geier, Esq., Anayancy R. Housman, Esq., Law Office of Anayancy R. Housman, Elizabeth, NJ, for Petitioner.

Eric H. Holder, Jr., Esq., Thomas W. Hussey, Esq., Aaron R. Petty, Esq., Ann C. Varnon, Esq., United States Department of Justice, Office of Immigration Litigation, Civil Division, Washington, DC, for Respondent.

Before: FUENTES, JORDAN and HARDIMAN, Circuit Judges.

OPINION

PER CURIAM.

John Rendon petitions for review of the Board of Immigration Appeals' ("BIA") final order of removal. For the following reasons, we will deny the petition.

I.

Rendon is a citizen of Colombia who entered the United States without inspection in 1993. In November 1995, he married Gaty Ramos, a United States citizen (although he now disputes the legal validity of the marriage). As a result, he ob-

tained conditional permanent resident status following an interview with the then-Immigration and Naturalization Service ("INS").

Rendon later applied to lift the conditions on his status, and he and Ramos appeared for a second interview toward that end in November 2000. Both appeared for a morning session, but only Rendon returned in the afternoon. After he did, an INS officer told him that Ramos had been married five times and was already married to another man when Rendon married her. Rendon then gave a sworn statement, in which he admitted that: (1) a third party arranged the marriage for immigration purposes in exchange for $5,000; (2) he and Ramos never lived together as husband and wife and he did not intend to do so at the time he married her; (3) he and Ramos had studied for the immigration interview the night before; and (4) he paid Ramos $500 to appear for the interview. (A.R. 184–86.) Rendon and Ramos ultimately divorced in May 2001.

Thereafter, the INS denied Rendon's application and terminated his conditional permanent resident status. The Government filed a Notice to Appear charging Rendon as removable: (1) under 8 U.S.C. § 1227(a)(1)(d)(i) because his residency status had been terminated; and (2) under 8 U.S.C. § 1227(a)(1)(A) because he is inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i) for having procured that status by fraud or willful misrepresentation. Before the Immigration Judge ("IJ"), Rendon admitted that he is a citizen of Colombia and that his residence status had been terminated, but otherwise denied the charges. He also applied for cancellation of removal under 8 U.S.C. § 1229b(b)[1] on the grounds that his removal would result in hardship for his United States citizen daughter (by another relation), who is suffering from speech-related problems.

At his hearing, Rendon denied most of the substance of his prior statement (though he admitted paying Ramos $500 to attend the interview) and testified that he gave the statement under duress because INS officers threatened to send him to jail if he did not admit that the marriage had been arranged. (A.R. 156–59.) Contrary to his statement, he testified that he met Ramos at a discotheque and married her out of love, though the couple lived together for only six months and he ultimately obtained a divorce on the grounds of abandonment.

The IJ, however, found that the marriage had been fraudulent and sustained the charges of removal. He relied on Rendon's prior statement but, acknowledging Rendon's assertion that he made it under duress, relied also on Rendon's testimony about other events that he found inconsistent with Rendon's claim that he divorced Ramos because she had abandoned him. The IJ also denied Rendon's application for cancellation of removal. The IJ found that removal would result in the requisite hardship to Rendon's daughter, but concluded that (1) Rendon was statutorily ineligible for cancellation because his fraudulent marriage precluded a finding that he was a person of "good moral character," 8 U.S.C. § 1229b(b)(1)(B), and (2) that issue aside, he would deny the application in the exercise of his discretion, in part because of the serious nature of the fraud and because Rendon's daughter was doing well.

---

**1.** This provision gives the Attorney General the discretion to cancel an alien's removal if the alien satisfies four threshold statutory requirements, including that the alien has been a "person of good moral character" during at least 10 years of residence in the United States and that the alien's removal "would result in exceptional and extremely unusual hardship" to a qualifying relative. 8 U.S.C. § 1229b(b)(1).

The BIA agreed with the IJ on both points and dismissed his appeal. Rendon petitions for review.[2]

## II.

Rendon challenges only the denial of his application for cancellation of removal. After he filed his brief, the Government filed a motion for summary action, arguing that the BIA's denial of cancellation in the exercise of its discretion is sufficient to support its ruling and that we lack jurisdiction to review that discretionary decision under 8 U.S.C. § 1252(a)(2)(B)(i). We agree that "[t]his Court generally lacks jurisdiction to review discretionary decisions made under § 1229b regarding cancellation of removal." *Mendez–Reyes v. Att'y Gen.*, 428 F.3d 187, 189 (3d Cir.2005). We retain jurisdiction, however, to review "constitutional claims or questions of law." *Id.* (citing 8 U.S.C. § 1252(a)(2)(D)). We do so *de novo*, subject to established principles of deference on agency review. *See Wu v. Att'y Gen.*, 571 F.3d 314, 317 (3d Cir.2009). We conclude that Rendon has raised two issues that we have jurisdiction to review and a third that requires discussion. Because these arguments lack merit and do not present a substantial question, however, we will grant the Government's motion and deny Rendon's petition. *See* 3rd Cir. LAR 27.4 (2008); 3rd Cir. IOP Ch. 10.6.

■ Rendon argues that the BIA committed both legal and constitutional error in finding that his marriage was fraudulent, and that it thus erred in relying on that factor in exercising its discretion to deny his application.[3] First, Rendon argues that, because Ramos was already married when he married her, his marriage was void *ab initio* and had no legal effect. Thus, he reasons, he cannot be found to have entered into a fraudulent marriage if he cannot legally be deemed to have entered into a marriage at all. We are not persuaded. The IJ rejected this argument on the grounds that Rendon could still be deemed to have committed fraud whether his marriage turned out to be legally valid or not (IJ Dec. at 4), and we agree. The legally relevant factor in this case is the fraud, not the validity of the marriage that was the subject of the fraud. *Cf. Onyeme v. INS*, 146 F.3d 227, 230, 234–35 (4th Cir.1998) (recognizing that basis for deportation was alien's misrepresentation about his marriage, not the validity of his marriage).[4]

■ Second, Rendon argues that the IJ deprived him of due process because it was "fundamentally unfair" for the IJ to rely on his prior statement. That is so, he argues, because he made the statement under duress and the Government did not

---

**2.** We review the decisions of both the IJ and the BIA in this case because the BIA both affirmed the IJ's rulings and summarized his reasoning while providing some of its own. *Sandie v. Att'y Gen.*, 562 F.3d 246, 250 (3d Cir.2009).

**3.** Rendon raised these arguments in his brief only as challenges to the BIA's conclusion that he was statutorily ineligible for cancellation because he was not a "person of good moral character," not as challenges to the BIA's overall exercise of discretion. He did not assert them as a challenge to the BIA's exercise of discretion as well until his response to the Government's motion. Thus, as

the Government argues, we could deem that challenge waived. *See Hoxha v. Holder*, 559 F.3d 157, 162–63 (3d Cir.2009). Because Rendon raised the substance of these arguments in his opening brief, however, we will address them on the merits.

**4.** The sole authority on which Rendon relies held merely that an alien's visa was void because he obtained it by marrying a United States citizen after he already had married someone else. *See Lozoya–Zarote v. INS*, 3 F.3d 437 (Table), No. 92–5217, 1993 WL 347081, at *2 (5th Cir. Aug.17, 1993). That decision is inapposite.

produce the officer who took the statement for cross-examination at the hearing. The Government argues that Rendon was not entitled to due process given the discretionary nature of the relief he sought, but we need not reach that issue because the substance of Rendon's argument lacks merit.

Rendon does not frame this argument in terms of the admissibility of his statement, but we have recognized in that context that whether IJs may rely on particular evidence depends on " 'whether the evidence is probative and whether its use is fundamentally fair so as not to deprive the alien of due process of law.' " *Ezeagwuna v. Ashcroft,* 325 F.3d 396, 405 (3d Cir.2003) (citation omitted). We also have recognized that due process requires "a meaningful opportunity to be heard" and a "reasonable opportunity to present evidence." *Jarbough v. Att'y Gen.,* 483 F.3d 184, 190, 192 (3d Cir.2007).

The IJ's reliance on Rendon's statement did not deprive him of these protections. Rendon's prior statement clearly was probative, and the IJ himself solicited and considered Rendon's explanation for the statement. Moreover, although the officer who took the statement was not available for cross-examination, the statement was Rendon's own, not the officer's, and Rendon was permitted to explain the circumstances under which he gave it. Rendon cites no authority suggesting that these circumstances deprived him of due process, and we are aware of none.[5]

Finally, Rendon argues that the BIA erred in weighing the equities because it failed to "fully consider" the hardships his daughter will face if he is removed. The BIA did not specifically mention those hardships. The IJ did so, however, and concluded on balance that they did not warrant cancellation of removal as matter of discretion. (IJ Dec. at 12–14.) The BIA declined to disturb that ruling. (BIA Dec. at 2.) To the extent that Rendon's brief might be read to argue that the BIA gave these hardships inadequate weight, we lack jurisdiction to review that argument. *See Cospito v. Att'y Gen.,* 539 F.3d 166, 170 (3d Cir.2008); *Jarbough,* 483 F.3d at 189.

Accordingly, we will deny the petition for review.

---

[5]. We have held as a matter of substantial evidence that IJs may not rely exclusively on certain immigration interviews in finding an alien not credible, particularly where the circumstances of the interview are unclear or there were apparent language difficulties. *See, e.g., Korytnyuk v. Att'y Gen.,* 396 F.3d 272, 289–90 & n. 22 (3d Cir.2005). Rendon has not invoked this line of authority or otherwise argued that the IJ's conclusion regarding his marriage is not supported by substantial evidence (and we likely would lack jurisdiction to review that argument if he had). Moreover, the concerns underlying those decisions do not appear to be present in this case, and the IJ did not rely exclusively on Rendon's prior statement in finding his marriage fraudulent.