NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 08-3669

GIOVANNY GRACIA MONCALEANO,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

On Petition for Review of a Final Order
of the Board of Immigration Appeals
Immigration Judge:  Honorable Walter A. Durling
(No. A036-052-224)

Argued January 11, 2010

Before: RENDELL, AMBRO, and CHAGARES, Circuit Judges

(Opinion filed: August 13, 2010)

Steven A. Morley, Esquire (Argued)
Morley, Surin & Griffin
325 Chestnut Street, Suite 1305-P
Philadelphia, PA   19106-0000

     Counsel for Petitioner

Annette M. Wietecha, Esquire (Argued)
Richard M. Evans, Esquire
Andrew J. Oliveira, Esquire
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC   20044

      Counsel for Respondent

---

## OPINION OF THE COURT

---

AMBRO, <u>Circuit Judge</u>

Giovanny Gracia Moncaleano petitions for review of an order of the Board of Immigration Appeals ("BIA") vacating the decision of the Immigration Judge ("IJ") granting Gracia's application for cancellation of removal under 8 U.S.C. § 1229b(a). We grant the petition because the BIA conducted a *de novo* review of the IJ's findings of fact and engaged in its own factfinding, both in violation of 8 C.F.R. § 1003.1(d)(3).

### I.    Factual and Procedural History

Gracia is a native and citizen of Colombia. He was admitted to the United States as a lawful permanent resident in 1979, at the age of seven.

Gracia's mother is a United States citizen, and his five sisters are lawful permanent

2

residents.[1]  Two of his siblings are in Colombia.  He has four United States citizen children by three different mothers: a son, born in July 1991, and three daughters, born in June 1999, October 2001, and February 2005, respectively.  He has worked full-time as an electrician since 1999.

While in the United States, Gracia compiled an extensive record of misdemeanor criminal arrests and convictions.  His first two convictions came in 1991, for simple assault and for theft by unlawful taking.  He was convicted in 1992 of criminal mischief and conspiracy to commit criminal mischief, in 1994 of battery and resisting a law enforcement officer, and in 1995 of resisting a law enforcement officer.  In 2002 he was convicted of possession of drug paraphernalia, in 2004 of exhibiting false documents, and in 2007 of harassment.

In August 2007, about 28 years after he came to the United States, the Department of Homeland Security issued Gracia a Notice to Appear charging him, under § 237(a)(2)(A)(ii) of the Immigration and Nationality Act ("INA"), as removable for being convicted of two or more crimes involving moral turpitude after his admission.  Two months later, DHS amended the complaint against Gracia to allege his removability under § 237(a)(2)(B)(i) of the INA, based on his 2002 conviction for possession of drug

---

[1] That his mother is a U.S. citizen and his five sisters are lawful permanent residents are taken from Gracia's appellate brief.  Petitioner's Br. 9.  In his application for cancellation of removal and at the hearing before the IJ, Gracia stated that his mother and one of his sisters were legal permanent residents, and his other four sisters were United States citizens.  A.R. 17–18, 293, 545, 550–51.

paraphernalia.[2]  He was held in custody on these charges.

Prior to his incarceration, Gracia lived in New Jersey with his mother, his youngest daughter, and that daughter's mother, in a home he was renting with an option to purchase. Because of his incarceration, he lost the home, and his mother was placed in what Gracia refers to as a "day care" program (staying with Gracia's sisters at night and on weekends).  His youngest daughter and her mother moved out of state.

At the first hearing before the IJ, Gracia conceded his criminal convictions.  The IJ informed Gracia, and the Government agreed, that Gracia was eligible for cancellation of removal under 8 U.S.C. § 1229b(a), as none of his convictions was an aggravated felony.[3] (The IJ adjourned the second hearing so that Gracia could secure legal counsel.)  At the third hearing, Gracia was represented by *pro bono* counsel, and the IJ granted the cancellation of removal application.  When considering whether to grant cancellation of removal, the IJ, "upon review of the record as a whole, 'must balance the adverse factors evidencing the alien's undesirability as a permanent resident with the social and humane considerations presented in his (or her) behalf.'" *In re C-V-T-*, 22 I. & N. Dec. 7, 11

---

[2] INA § 237(a)(2)(B)(i) provides, "Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable."

[3] 8 U.S.C. § 1229b(a) provides that the Attorney General may cancel the removal of an alien who "(1) has been an alien lawfully admitted for permanent residence for not less than 5 years, (2) has resided in the United States continuously for 7 years after having been admitted in any status, and (3) has not been convicted of any aggravated felony."

(BIA 1998) (quoting *Matter of Marin*, 16 I. & N. Dec. 581, 584 (BIA 1978)).

At this last hearing, Gracia again conceded his 2002 conviction for possession of drug paraphernalia, and the IJ stated that the "[o]nly question is whether, as a matter of discretion, [Gracia] warrants relief as he seeks today." Gracia testified in support of his application, stating that, if released, he planned to reestablish his relationship with his children and return to work as an electrician. He further testified that he is close to all of his children and pays court-ordered child support. He stated that he knew nothing of life in Colombia, having left that country at an early age. Gracia's mother, sisters, and son submitted affidavits on his behalf, as did his probation officer, who stated that Gracia "has not shirked the responsibility that he has had to the probation department or to his family, especially his children. He has made poor decisions in the past but has made efforts to correct them and to become a productive member of society."

The IJ granted Gracia's application for cancellation of removal. His misdemeanor convictions and 15 arrests, his repeated bad judgment, and the fact that it was not "self-evident" that he was a changed individual, the IJ concluded, were outweighed by several positive factors. They included the following:

- Gracia had a lengthy residence in the United States, had a stable work history, and was a "hard worker";

- his convictions were all misdemeanors;

- his remorse for his criminal behavior was genuine;

5

- he "sincerely cares for his children and they care for him";

- he took seriously his responsibility as a father and had been "attentive to paying child support for his three youngest children";

- his three youngest children presumptively were "partially dependent" on him for child support;

- if he remained in the United States, he would provide financial support for his children;

- if he were removed, "any meaningful relationship with his children w[ould] come to an end for all practical purposes," and hardship would come to the children over the permanent separation from their father; and

- as a general matter, it is desirable "to maintain a parental relationship whenever feasible."

The balancing of these equities led the IJ to exercise his discretion in favor of Gracia.

The Government appealed the IJ's decision, whereupon the BIA sustained the Government's appeal, vacated the IJ's decision, and ordered Gracia removed to Colombia. Twelve days later, he was removed.

## II.  Jurisdiction

Before turning to the merits, we first address the Government's argument that we lack jurisdiction over Gracia's petition because he (1) does not raise "constitutional claims or questions of law," and (2) did not exhaust his arguments before the BIA.

6

**A.     § 1252(a)(2)(D)**

We generally have no jurisdiction to review discretionary decisions made regarding cancellation of removal, 8 U.S.C. § 1252(a)(2)(B)(i); *Mendez-Reyes v. Att'y Gen.*, 428 F.3d 187, 189 (3d Cir. 2005), or final orders of removal against aliens who have been convicted of a controlled substance offense.  8 U.S.C. § 1252(a)(2)(C). However, despite this jurisdictional limitation, we retain jurisdiction over "constitutional claims or questions of law."  *Id.*§ 1252(a)(2)(D); *Mendez-Reyes*, 428 F.3d at 189.

Gracia raises three "questions of law" over which we have jurisdiction under § 1252(a)(2)(D):  (1) whether the BIA engaged in its own fact-finding and *de novo* review of the IJ's findings of fact, in contravention of 8 C.F.R. § 1003.1(d)(3); (2) whether the BIA applied the wrong legal standard to his cancellation of removal claim; and (3) whether the IJ failed to make a determination that his conviction constituted a drug-related conviction.  *See Pareja v. Att'y Gen.*, --- F.3d ----, 2010 WL 2947239, at *5 (3d Cir. July 29, 2010) ("[W]here the BIA is alleged to have made a . . . determination based on an erroneous legal standard or on fact-finding which is flawed by an error of law, our jurisdiction to review that determination is secure." (internal quotation marks and citation omitted)); *see also Padmore v. Holder*, 609 F.3d 62, 67 (2d Cir. 2010) ("[W]hen the BIA engages in factfinding in contravention of 8 C.F.R. § 1003.1(d)(3)(iv), it commits an error of law, which we have jurisdiction to correct.").

Nevertheless, to the extent Gracia challenges the BIA's balancing of the positive

and negative factors and its exercise of discretion, we lack jurisdiction over those claims. *See Cruz-Camey v. Gonzales*, 504 F.3d 28, 29 (1st Cir. 2007) (noting appellate courts have no jurisdiction over "challenges [to] the manner in which the BIA balanced the various positive and negative factors" for cancellation of removal).

**B.      Exhaustion**

Our jurisdiction is limited to claims for which a petitioner "has exhausted all administrative remedies available . . . as of right."  8 U.S.C. § 1252(d)(1).  A "petitioner is deemed to have exhausted all administrative remedies, and thereby preserves the right of judicial review, if he or she raises all issues before the BIA."  *Lin v. Att'y Gen.*, 543 F.3d 114, 120–21 (3d Cir. 2008) (internal quotation marks and citation omitted).  Our exhaustion policy is liberal:  "[S]o long as an immigration petitioner makes some effort, however insufficient, to place the Board on notice of a straightforward issue being raised on appeal, a petitioner is deemed to have exhausted her administrative remedies."  *Id.* (internal quotation marks and citation omitted).

Gracia's first two questions of law result from the BIA's opinion itself.  But for a motion for reconsideration to the BIA, these issues could not have been raised to the BIA. It is an open question in our Circuit whether the petitioner must file a motion to reconsider (*i.e.*, whether the remedy of a motion for reconsideration is available "as of

right") to exhaust his claim in these circumstances.[4]

While we requested supplemental briefing on this issue, we do not reach it here because Gracia could not have filed such a motion.[5] Although petitioners have 30 days after the mailing of the BIA decision to file a motion to reconsider, agency regulations provide that motions to reconsider cannot be filed by or on behalf of anyone who is the subject of removal proceedings after they have departed from the United States. 8 C.F.R. § 1003.2(d). If a person departs after filing a motion to reconsider, that motion is considered withdrawn. *Id.* Here, Gracia was removed 12 days after the BIA decision. Thus, had he filed a motion to reconsider before that time, it would have been withdrawn; after his removal, he was forbidden from filing it. In this Catch-22 context, a motion for reconsideration was not available as a remedy at all, much less "as of right." Exhaustion, therefore, is not a barrier.

Gracia's third question of law, however, has not been exhausted. He argues that the IJ and BIA failed to perform the required analysis to determine whether his convictions were removable offenses, but he did not challenge the sufficiency of his drug conviction under INA § 237(a)(2)(B)(i) either before the IJ or before the BIA. Therefore, we do not have jurisdiction to review this claim.

---

[4] In at least one precedential opinion, we have proceeded to the merits of a claim that the BIA engaged in *de novo* review of the IJ's factual findings without mentioning exhaustion. *See Chavarria v. Gonzalez*, 446 F.3d 508 (3d Cir. 2006).

[5] Moreover, the Government in its supplemental brief and at oral argument conceded that a motion for reconsideration need not have been filed in this case.

### III. Discussion[6]

Before 2002 the BIA reviewed all aspects of IJ decisions *de novo*. *See Kaplun v. Att'y Gen.*, 602 F.3d 260, 268 (3d Cir. 2010). But that year the Attorney General adopted procedural reforms that changed the nature of BIA review. "[T]he rule retains *de novo* review both for questions of law and for questions of judgment (concerning whether to favorably exercise discretion in light of the facts and the applicable standards governing the exercise of such discretion)." Board of Immigration Appeals: Procedural Reforms To Improve Case Management, 67 Fed. Reg. 54,878, 54,881 (Aug. 26, 2002) (hereinafter "Procedural Reforms"). However, the BIA is now prohibited from engaging "in de novo review of findings of fact determined by an immigration judge" and from conducting "factfinding in the course of deciding appeals." 8 C.F.R. § 1003.1(d)(3)(i), (iv). "Facts determined by the immigration judge, including findings as to the credibility of testimony, shall be reviewed only to determine whether the findings of the immigration judge are clearly erroneous." *Id.* § 1003.1(d)(3)(i).

The BIA in this case exceeded the scope of its authority by both engaging in its own factfinding and disregarding the IJ's factual determinations. It overturned, with no specific reference to the record or any discussion of "clear error," several of the IJ's

---

[6] We review constitutional and legal questions *de novo*, but defer to the BIA's reasonable interpretations of the statutes it administers. *Debeato v. Att'y Gen.*, 505 F.3d 231, 235 (3d Cir. 2007); *see also Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984).

10

factual findings, and replaced them with its own.

First, the BIA concluded that the members of Gracia's family were "able to support themselves." This is directly contrary to the IJ's statement that Gracia's three youngest children were "partially dependent upon him" for financial support. The BIA did not discuss why it reached this opposite conclusion or why the IJ's finding was clearly erroneous.

Second, the BIA concluded that it was "unclear what role [Gracia] will be able to play in [his children's] lives." But the IJ had found (and, indeed, emphasized) that an important factor weighing in favor of cancellation of removal was the continued role Gracia would have in his children's lives. The IJ found that, if Gracia were removed, "any meaningful relationship with his children will come to an end," but that if he remained he would be "expected to continue to provide financial support." The IJ expressed his desire "to maintain a parental relationship" between Gracia and his children, and his exercise of discretion to grant cancellation of removal was based in large part on his finding that removal of Gracia would be a hardship on his children. Yet, without explanation or a clearly erroneous determination, the BIA disregarded the IJ's factual premise for his judgment.

The BIA also engaged in its own factfinding.[7] It found that Gracia would "no

_____

[7] Moreover, the BIA stated incorrectly the record in one instance. It wrote that Gracia "did not provide any tax returns" in support of his application, when in fact he did. *See* A.R. 175–76, 504–505.

11

longer be able to care for [his mother] when he is released, as he no longer has a house or a partner to care for her during the daytime when he is working." The IJ had made no factual finding as to what would happen to Gracia's mother when he was released. If the BIA wants a factual finding on this issue, it is free to remand to the IJ for him to make one.

The BIA here disagreed not just with the IJ's weighing analysis (which it was free to do), but also with the factual premises for his judgment. The BIA's role is "to identify clear errors of fact or errors of law in decisions under review, . . . not to serve as a second-tier trier of fact." Procedural Reforms, 67 Fed. Reg. at 54,880. Because it exceeded the scope of its authority, we grant the petition of review, vacate the BIA's decision, and remand to the BIA for further proceedings.[8]

---

[8] As we remand on this ground, we do not address Gracia's claim that the BIA ignored its own precedent. However, we note that the BIA, in its paragraph weighing the equities, did not discuss Gracia's "residence of long duration in this country" beginning at a "young age," his nine-year history of working as an electrician, or the "hardship to [Gracia] and his family if deportation occurs." *See In re C-V-T-*, 22 I. & N. Dec. at 11. On remand, the BIA should weigh in its analysis all of the factors identified in its precedents that are relevant here.