**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2972
_____

MARZENA MAGDALENA BERA,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A089-913-017)
Immigration Judge:  Honorable Frederic G. Leeds

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 6, 2014
Before:  FISHER, VANASKIE and ALDISERT, <u>Circuit</u> <u>Judges</u>

(Opinion filed: February 12, 2014 )
_____

OPINION
_____

PER CURIAM

Marzena Magdalena Bera ("Bera") petitions for review of the Board of

Immigration Appeals' (the "Board") final order of removal.  For the reasons that follow,

we will deny the petition for review.

I.

Petitioner Marzena Magdalena Bera, a citizen of Poland, entered the United States in September 2007. In September 2008, she applied for asylum but was referred to removal proceedings. The notice to appear charged her with being present in violation of the law, pursuant to 8 U.S.C. § 1227(a)(1)(B). She conceded removability and applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). In support of her application, she claimed that she had been persecuted in Poland because she participated in the Solidarity Movement during the 1980s and because she is Jewish.

In an oral decision, the Immigration Judge ("IJ") determined that Bera was credible, but he concluded that the harassment and discrimination that she faced did not amount to past persecution. The IJ found that Bera had not established that she would face future persecution if she returned to Poland, especially in light of the evidence contained in the International Religious Freedom Report, which indicated that the Polish government was reaching out to the Jewish community to improve the quality of life. The IJ also determined that the Polish government was "ready, willing and able" to offer protection to Bera. On that basis, the IJ denied Bera's asylum, withholding of removal, and CAT claims and ordered her removal to Poland.

Bera appealed to the Board, and then filed three motions to remand. In June 2013, the Board dismissed her appeal, after determining that Bera had not established that she suffered past persecution or that she had a well-founded fear of future persecution. The

2

Board then agreed with the IJ's conclusion that Bera had not established a clear probability of future persecution that would make her eligible for withholding of removal. Regarding her CAT claim, the Board found that Bera had not established that it was "'more likely than not' that she would be subject to torture by, or with the consent or acquiescence of[,] a public official or other person acting in official capacity in Poland." The Board lastly considered the additional evidence that Bera submitted alongside her motions to remand, and it determined that the evidence did not establish Bera's prima facie eligibility for relief.[1] Bera, through counsel, filed a timely petition for review.

II.

We have jurisdiction under 8 U.S.C. § 1252. While our review extends only to the Board's order of removal, we may review the decision of the IJ to the extent that the Board's order expressly adopts or defers to a finding of the IJ. Kayembe v. Ashcroft, 334 F.3d 231, 234 (3d Cir. 2003). "We apply substantial evidence review to agency findings of fact, departing from factual findings only where a reasonable adjudicator would be compelled to arrive at a contrary conclusion." Mendez-Reyes v. Att'y Gen. of the U.S., 428 F.3d 187, 191 (3d Cir. 2005). Our review of legal conclusions is de novo, subject to principles of deference. Kaplun v. Att'y Gen., 602 F.3d 260, 265 (3d Cir. 2010). We

---

[1] The Board also determined that Bera had not shown any prejudice arising from interruptions during and mistranslations of her testimony, and that Bera failed to appeal the IJ's determination that she was ineligible for asylum based on domestic violence. We note that, because Bera failed to raise these issues in her petition for review and opening brief, they are waived. See Voci v. Gonzales, 409 F.3d 607, 609 n.1 (3d Cir. 2005).

3

review denials of motions to remand under a deferential abuse of discretion standard. See Huang v. Att'y Gen., 620 F.3d 372, 389-90 (3d Cir. 2010).

III.

The Board denied Bera's asylum claim after concluding that Bera had failed to establish past persecution or a well-founded fear of future persecution. To establish past persecution, an alien must show that, on account of a statutorily protected ground, she suffered "threats to life, confinement, torture, and economic restrictions so severe that they constitute a real threat to life or freedom ." Chavarria v. Gonzalez, 446 F.3d 508, 518 (3d Cir. 2006). Isolated incidents that do not result in serious injury are generally not considered examples of persecution. See Voci v. Gonzales, 409 F.3d 607, 615 (3d Cir. 2005). Moreover, where an alien complains of threats, she must demonstrate that the threats are "highly imminent and menacing in nature," so much so that they "cause significant actual 'suffering or harm.'" Chavarria, 446 F.3d at 518.

At the merits hearing before the IJ, Bera testified that, as a result of her involvement with the Solidarity Movement, she was detained for a period of three days in 1982 and was legally unable to work or receive public assistance for the next eight years. Bera also testified to a number of anti-Semitic incidents leading up to and following her 2006 conversion to Judaism. Her husband, in-laws, and children responded with verbal abuse and disapproval. Soon after Bera's conversion, she was terminated from her municipal teaching job, though she did receive a pension within several months. At various times prior to her arrival in the United States, she was harassed by strangers,

4

including incidents where "skinheads" confronted her on the street, unknown people imprinted nearly 50 Stars of David on the sidewalk in front of her home, counter-protesters threw tomatoes and garbage at her during a Parade for Equality, and passengers twice yelled at her while she read the Talmud and a Hebrew prayer book on the train. She also had a difficult time finding an apartment after divorcing her husband. At some point, Leszek Bubel, a well-known leader of the anti-Semitic Polish National Party, published Bera's name in a book called the *Great Encyclopedia of Jews*. After she left Poland, she sublet her apartment to two Jewish friends who were later evicted, and Bera's possessions, including Judaica, were then destroyed by the landlord. However, Bera reported none of these incidents to the police or other authorities.

Bera's past experiences are troublesome but they fall short of past persecution. When she was arrested for three days in the 1980s, she was not mistreated or otherwise harmed. See Kibinda v. Att'y Gen., 477 F.3d 113, 119-20 (3d Cir. 2007) (stating that a five-day detention and beating that required stitches and left a scar were not "severe enough to constitute persecution under our stringent standard"). The incidents of anti-Semitism that Bera experienced were isolated and she did not report any serious injuries. See Voci, 409 F.3d at 615. She has not shown that the inclusion of her name in the *Great Encyclopedia of Jews* was a highly imminent threat causing her "significant actual suffering or harm," such that it constitutes persecution. See Chavarria, 446 F.3d at 518. Although she reported two distinct periods of economic suffering — after she was arrested in 1982 and again after she was terminated from her teaching job in 2006 — she

also testified that she was able to work illegally and obtain a secondary degree during the 1980s, and that she received a pension in 2006. She has therefore not shown that she suffered from economic persecution. See Li v. Att'y Gen., 400 F.3d 157, 169 (3d Cir. 2005) (holding that the "deliberate imposition of severe economic disadvantage" that could threaten a petitioner's life or freedom may constitute persecution). We therefore conclude that substantial evidence supports the agency's finding that Bera failed to demonstrate past persecution.

The record evidence also supports the Board's conclusion that Bera failed to demonstrate a well-founded fear of future persecution. To prevail, Bera needed to show "potential harm rising to the level of persecution on account of a statutorily enumerated ground that is committed by the government or by forces the government is unable or unwilling to control." Kibinda, 477 F.3d at 119. The record shows that anti-Semitic threats are made somewhat frequently in Poland. Moreover, Bera's name is included in Leszek Bubel's anti-Semitic publication. However, Bera did not establish the involvement of any governmental officials in publishing the *Great Encyclopedia of Jews*, nor did she show that the threats to Poland's Jewish population are made by the government or forces the Polish government is unable or unwilling to control. Substantial evidence therefore supports the Board's determination that Bera did not have an objective basis for her fear of future prosecution.[2]

---

[2] Bera fares no better on her withholding of removal claim, as the showing required for withholding of removal is the "heightened" showing of a clear probability of future

The Board denied Bera's CAT claim after concluding that Bera had not established that it was more likely than not that she would be subject to torture upon her return to Poland. To be eligible for CAT relief, an alien must show that it is more likely than not that she will be tortured if removed to the country in question. 8 C.F.R. § 1208.16(c)(2). "Torture" consists of the intentional infliction of "severe pain or suffering . . . by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). Bera did not show that it is more likely than not that having her name published in the *Great Encyclopedia of Jews* makes her a target for torture by, or with the consent or acquiescence of, a public official or other person acting in an official capacity.

Finally, the Board denied Bera's motions to remand after determining that Bera's newly submitted evidence would not establish her prima facie eligibility for relief. The Board treats motions to remand in the same manner as motions to reopen the record. Huang, 620 F.3d at 389-90. Accordingly, the Board may deny the motion where the alien has not established a prima facie case for the relief sought. Caushi v. Att'y Gen., 436 F.3d 220, 231 (3d Cir. 2006). Here, Bera submitted new evidence showing that the Polish government thwarted a potential bomb attack on parliament, which had been planned by an avowed anti-Semite. She also submitted evidence of verbal attacks on

persecution. Yuan v. Att'y Gen., 642 F.3d 420, 426 (3d Cir. 2011). Bera also did not establish her eligibility for humanitarian asylum, which is reserved for those who have suffered severe past persecution. See Sheriff v. Att'y Gen., 587 F.3d 584, 594-95 (3d Cir. 2009).

7

Jews at a restaurant, in a play, and online (including music videos made by Leszek Bubel).  The Board plausibly concluded that Bera's evidence demonstrated the presence of potential societal discrimination, but not persecution.  We therefore conclude that the agency did not abuse its discretion in denying Bera's motions to remand.  See Huang, 620 F.3d at 379, 390.

After reviewing the record, we cannot conclude that the Board's decision was not supported by substantial evidence.  Accordingly, we will deny the petition for review.