**IMG-077**                                                  **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 09-3141 & 09-3926
_____

OLEKSIY DOROSH,
                                        Petitioner in 09-3141

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                              Respondent


ANDRIY KUCHEROV,
                                        Petitioner in 09-3926

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                              Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(A096-401-278 & A096-401-279)
Immigration Judge: Honorable Charles M. Honeyman
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 1, 2011
Before:  AMBRO, GREENAWAY, JR. AND GREENBERG, Circuit Judges

(Opinion filed:  May 10, 2011)
_____

OPINION
_____

PER CURIAM.

Petitioners, Oleksiy Dorosh and Andriy Kucherov, seek review of final orders of removal. For the reasons that follow, we will deny their petitions for review.

I.

Petitioners are natives of the former Soviet Union and citizens of Ukraine. On December 7, 2004, they arrived at San Francisco International Airport without valid travel documents. They were screened at the airport and provided sworn statements to immigration officials. On December 16, 2004, an asylum officer conducted credible fear interviews, and the government served notices to appear the same day. In a joint proceeding before an Immigration Judge ("IJ") in Philadelphia, petitioners conceded their removability as charged, and they applied for asylum, withholding of removal, and Convention Against Torture ("CAT") relief. Petitioners submitted documentary evidence and testified in support of their claim that they suffered past persecution in Ukraine, and fear future persecution in that country, as a gay couple.

In a lengthy written decision, the IJ rejected the credibility of petitioners' testimony due to a "plethora" of inconsistencies, and further denied relief because petitioners failed to corroborate their factual contentions. Assuming credibility, the IJ also denied asylum on the merits, holding that petitioners did not suffer past harm rising to the level of persecution inasmuch as they were the victims of a single assault resulting in minor injuries that did not require hospitalization. On the issue of future persecution,

the IJ was satisfied that petitioners have a subjective fear of harm, but concluded that they failed to show as an objective matter that they might be particularly targeted due to their sexuality, or that there is a pattern or practice of persecution of gays, in Ukraine. The IJ also denied withholding of removal and CAT relief.

Petitioners appealed separately to the Board of Immigration Appeals ("BIA"), which dismissed the appeals. In Dorosh's case, the BIA held that the adverse credibility determination was not clearly erroneous and was based on numerous inconsistencies. In addition, the BIA determined that the IJ properly considered the evidence of record in finding no well-founded fear of future persecution. In Kucherov's case, the BIA noted that it had already dismissed Dorosh's appeal; because Kucherov raised the same arguments as Dorosh, the BIA dismissed his appeal for the same reasons. Petitioners timely filed separate petitions for review, which have been consolidated for briefing and disposition.

II.

We have jurisdiction under 8 U.S.C. § 1252(a)(1). Because the BIA stated that the IJ's adverse credibility determination was not clearly erroneous and essentially adopted the IJ's analysis in rejecting the issues that petitioners raised on appeal, our review is of the IJ's decision. Wu v. Att'y Gen., 571 F.3d 314, 317 (3d Cir. 2009). We apply substantial evidence review to factual findings, including an adverse credibility determination, "departing from factual findings only where a reasonable adjudicator would be compelled to arrive at a contrary conclusion." Mendez-Reyes v. Att'y Gen.,

3

428 F.3d 187, 191 (3d Cir. 2005); see Gabuniya v. Att'y Gen., 463 F.3d 316, 321 (3d Cir. 2006). We must uphold a factual determination if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole. Wu, 571 F.3d at 317. Our review of legal conclusions is de novo, subject to principles of deference. Id.

Petitioners first challenge the adverse credibility determination. They argue that the IJ failed to consider the totality of the circumstances, that the inconsistencies cited by the IJ are either nonexistent or fail to provide specific and cogent reasons for the adverse determination, and that the IJ failed to afford an adequate opportunity for petitioners to explain the inconsistencies that do exist. Petitioners' Br. at 20. We discern no error.

Because petitioners filed their asylum applications after May 11, 2005, the IJ applied the credibility standard of the REAL ID Act of 2005.[1] See Caushi v. Att'y Gen., 436 F.3d 220, 229 n.5 (3d Cir. 2006). Under the REAL ID Act, an IJ may base an adverse credibility determination on inconsistencies, inherent implausibilities, inaccuracies, and other factors, "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii).

According to petitioners' own tally, the IJ identified at least sixteen separate

[1] Petitioners suggest that the REAL ID Act's credibility standard should not apply to them because they were given a credible fear interview on December 16, 2004, and, they argue, that interview can be considered an affirmative application for asylum made prior to the REAL ID Act's effective date. Petitioners' Br. at 18 n.2. We reject this argument as waived because petitioners merely raise it in a footnote and do not develop it at all in their brief. See John Wyeth & Brother Ltd. v. Cigna Int'l Corp., 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("[A]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived."); see also Odd v. Malone, 538 F.3d 202, 207 n.2 (3d Cir. 2008) (same).

inconsistencies or falsehoods in their testimony.  Petitioners' Br. at 20-32.  The IJ found that petitioners contradicted themselves and each other through statements made in their various applications and interviews with immigration authorities, as well as in their court testimony.  The IJ cited inconsistencies covering numerous issues, including information about petitioners' prior marriages in Ukraine, details about their relationship with each other, specifics about threats that they allegedly received (or did not receive) prior to being assaulted on October 28, 2004, and the nature of the injuries that they allegedly suffered in the assault.  As the BIA observed on appeal, the many inconsistencies "covered most aspects of" petitioners' case.  A.R. at 3.

Petitioners seek to characterize much of the inconsistent testimony as "minor" and "largely innocent mistakes."  Petitioners' Br. at 34.  We agree that certain of the inconsistencies, such as the slight discrepancy in the dates on which petitioners met and moved in together, could be viewed as inconsequential, and likely would not alone support an adverse credibility finding in this case.  But some of the inconsistencies cannot be portrayed as irrelevant to petitioners' claims for relief, such their conflicting statements about whether, if it all, they received threats prior to being assaulted, and about the injuries they allegedly suffered.  In addition, petitioners concede the existence of two obvious falsehoods in their dealings with immigration officials:  (i) Dorosh lied about whether he has children (he has two, a fact that he acknowledged before the IJ but had denied in earlier sworn statements); and (ii) Kucherov falsely stated during his credible fear interview that he has no relatives in the United States (his mother was

5

present when petitioners arrived and is a lawful permanent resident).

Considering the record as a whole, we cannot conclude that a reasonable factfinder would be compelled to determine that petitioners provided credible testimony. The IJ's adverse finding is rooted in the evidence of record, and the "plethora" of inconsistencies identified provides a reasonable basis upon which to reject petitioners' credibility. While petitioners complain that they were not provided an opportunity to explain their inconsistencies and falsehoods, petitioners make no showing that they were afforded anything but a full and fair hearing, and it is clear from the IJ's detailed written decision that he looked to the totality of circumstances before rendering the adverse credibility determination.[2]

Petitioners next challenge the IJ's alternative finding that they failed to demonstrate past persecution even assuming the credibility of their testimony. To establish eligibility for asylum, petitioners had to show either past persecution or a well-founded fear of future persecution on account of, inter alia, membership in a particular

---

[2] Petitioners also challenge the IJ's additional finding that they failed to provide sufficient corroborating evidence to prove the relevant facts surrounding their claims. The IJ explained that, notwithstanding their lack of credibility, petitioners could have rehabilitated themselves through sufficient documentation, but that petitioners failed to provide persuasive substantive evidence that they were attacked in Ukraine due to their sexual orientation, or that they suffered enduring injuries. Petitioners argue before this Court that the IJ erred in expecting them to submit additional corroborating evidence. Petitioners' Br. at 34-38. Petitioners failed, however, to raise and exhaust before the BIA any challenge to the IJ's finding regarding the need for additional corroboration, and the BIA did not address the issue on its own initiative. In light of the failure to exhaust administrative remedies, we have no jurisdiction to address this additional finding by the IJ. See 8 U.S.C. § 1252(d)(1); Lin v. Att'y Gen., 543 F.3d 114, 122 (3d Cir. 2008).

social group.  See Wang v. Gonzales, 405 F.3d 134, 138 (3d Cir. 2005).  The IJ accepted

that petitioners are members of a particular social group based on their sexual orientation,

and that they were attacked, at least in part, on that basis, but the IJ observed that,

> [b]ased upon [petitioners'] testimony, they were attacked by
> approximately six men, struck on their heads with batons, and
> briefly rendered unconscious.  Thereafter, [petitioners] did
> not seek medical attention, and returned to their apartment.
> The following day, [] Dorosh drove them to the police station,
> after which they still did not seek medical attention.  In fact,
> [petitioners] never sought medical attention in the Ukraine,
> and did not complain of any physical ailments when
> questioned during their airport and credible fear interviews.

A.R. at 50.  The IJ found that this incident did not rise to the level of persecution.

This Court has explained that persecution "'does not include every sort of

treatment our society regards as offensive.'"  Jarbough v. Att'y Gen., 483 F.3d 184, 191

(3d Cir. 2007) (quoting Fatin v. INS, 12 F.3d 1233, 1243 (3d Cir. 1993)).  "Abusive

treatment and harassment, while always deplorable, may not rise to the level of

persecution."  Id.  Rather, "persecution connotes extreme behavior, including 'threats to

life, confinement, torture, and economic restrictions so severe that they constitute a threat

to life or freedom.'"  Ahmed v. Ashcroft, 341 F.3d 214, 217 (3d Cir. 2003) (quoting

Fatin, 12 F.3d at 1240).

The record here does not compel a finding that petitioners' experiences in Ukraine

(assuming their credibility) rose to the level of persecution, as the IJ's determination "was

based on a reasonable interpretation of the definition of persecution under the INA."  Id.;

see Kibinda v. Att'y Gen., 477 F.3d 113, 119-20 (3d Cir. 2007) (a single detention and

beating requiring stitches and leaving a scar were not "severe enough to constitute persecution under our stringent standard"). "While this Court has not yet drawn a precise line concerning where a simple beating ends and persecution begins, our cases suggest that isolated incidents that do not result in serious injury do not rise to the level of persecution." Voci v. Gonzales, 409 F.3d 607, 615 (3d Cir. 2005).

Petitioners argue that the IJ erred in failing to credit medical reports that they submitted to show that they suffered permanent injuries in the attack. Petitioners submitted three letters from doctors who evaluated them after their arrival in the United States, and they contend that those doctors "confirm[ed] the link between the October 2004 attack and their current symptoms - Petitioner Dorosh continues to suffer hearing loss and Petitioner Kucherov continues to suffer excruciating headaches as a result of the attack." Petitioners' Br. at 42. The IJ found that, "while the medical reports … do corroborate those complaints, those reports do not explain the correlation between those injuries and the alleged attack, or explain why there would be a delay in the onset of symptoms." A.R. at 50. Noting that it lacked the medical expertise to make such determinations itself, the IJ refused to credit the medical evidence as sufficient to establish lasting injuries, and thus found that "it can only conclude that [petitioners] suffered a single assault, which resulted in minor injuries that did not require hospitalization and that healed within a few days." Id.

The record supports the IJ's determination. While the doctors' letters describe petitioners' present symptoms, they do not clearly link any injuries to the assault or

explain why the symptoms, at least in Dorosh's case, had a delayed onset.[3] Petitioners argue that they were not required to prove to a certainty that the attack resulted in lasting injuries or injuries with a delayed onset. Petitioners' Br. at 42. Their medical evidence, however, does not support a finding that there was a reasonable likelihood that they suffered past persecution based on the single assault.[4]

Petitioners next challenge the IJ's finding that they failed to establish a well-founded fear of future persecution if returned to Ukraine.[5] They claim that "if they are

---

[3] The doctor who examined Dorosh in December 2007 arguably implied a link to the assault, stating, "My feeling is that [Dorosh] has sustained significant head and facial injuries three years ago which results in significant hearing loss on the right side and nasal injury resulting in difficulty breathing through the left side due to deviated septum." A.R. at 186. However, the IJ was not without reason in choosing to discredit this doctor's vague "feeling," particularly in light of Dorosh's testimony that he had a delayed onset of symptoms -- a fact that the doctor never mentions. Further, as the IJ observed, the medical reports "were perfunctory and conclusory, providing … an inadequate basis to determine whether [petitioners'] injuries could have originated in the manner alleged, or how those medical professionals could make such conclusions." A.R. at 48. Petitioners did not call any of the doctors to testify before the IJ, and they relied solely upon the inadequate medical reports to corroborate their claimed injuries.

[4] Petitioners also contend that the IJ failed to consider that they received threats prior to the assault, that the police refused to investigate when petitioners reported the assault, and that petitioners testified that their gay neighbors were murdered shortly after petitioners were attacked. Petitioners' Br. at 43-44. We are not persuaded that the IJ failed to consider this evidence. The record reflects that the IJ expressly noted both the failure to investigate and the prior threats when assessing petitioners' claim. See A.R. at 49. In any event, petitioners have not shown that these additional factors compel the conclusion that they suffered past harm rising to the level of persecution.

[5] Because petitioners did not establish past persecution on the basis of their membership in a particular social group, they were not entitled to a presumption of a well-founded fear of future persecution on that ground. See 8 C.F.R. § 1208.13(b)(1).

9

returned … they will be persecuted by skinheads and other hate groups because of their openly homosexual orientation and relationship." Petitioners' Br. at 46.

The well-founded fear standard has both a subjective and objective component. "First, an applicant must show that his or her subjective fear is genuine and second that a reasonable person in the alien's circumstances would fear persecution if returned to the country in question." Wong v. Att'y Gen., 539 F.3d 225, 232 (3d Cir. 2008) (citation and quotation marks omitted). "The objective component of the analysis requires the alien to show that a reasonable person in his position would fear persecution, either because he would be individually singled out for persecution or because there is a pattern or practice in his home country of persecution against a group of which he is a member." Huang v. Att'y Gen., 620 F.3d 372, 381 (3d Cir. 2010) (quotation marks omitted).

Despite rendering the adverse credibility determination, the IJ credited as genuine petitioners' subjective fear of future harm in Ukraine, but concluded that their fear of returning lacks an objective basis. The IJ supported this determination with numerous findings based on the evidence of record, including the following: petitioners "have only elucidated a generalized fear of harm in the Ukraine, making occasional references to skinheads, but providing this Court with no concrete factual basis to believe that anti-gay groups would seek to harm them in particular"; "there is no indication that [petitioners'] alleged attackers knew who they were, beyond the fact that they were the new gay couple in the neighborhood"; the 2006 and 2007 State Department Reports do not reveal "evidence of widespread violence towards gays, whether by the populace in general, or

by militant groups or gangs in particular"; "homosexuality is not illegal in the Ukraine, … and the main conflicts involving sexual orientation in the Ukraine appear to be political in nature, concerning the extent to which gay individuals and groups should be granted certain rights"; "the gay population of the Ukraine does not appear to be repressed or politically powerless"; and "this Court can only point to one example in the whole record of an individual who was killed in the Ukraine due to his sexuality, and who was not a gay rights leader." A.R. at 51-52. The IJ concluded that "whatever violence does exist against gays in the Ukraine, it is neither systemic, nor pervasive, nor organized, and thus does not constitute a pattern or practice of persecution against that population." Id. at 52.

Petitioners contend that they provided evidence that they would be singled out for persecution, citing the fact that their gay neighbors were murdered because of their sexual orientation shortly after petitioners were assaulted in 2004. Petitioners' Br. at 47-48. Substantial evidence, however, supports the IJ's finding that petitioners articulated nothing stronger than a generalized fear of "skinheads." It is undisputed that the attackers who assaulted petitioners did not know who they were, and there is no evidence that any group would seek to harm petitioners in particular. Petitioners have not shown that they face an individualized risk that is any more severe than that faced by other homosexuals in Ukraine. See Lie v. Ashcroft, 396 F.3d 530, 537 (3d Cir. 2005).

Petitioners alternatively claim that they established the existence of a pattern or practice of persecution against homosexuals with government complicity. They point in

11

particular to the "Other Societal Abuses" section of the 2007 State Department Report on Ukraine as revealing that violence against homosexuals is not limited to individuals held in police custody, and that political opposition to homosexuality goes well beyond issues surrounding gay rights. Petitioners' Br. at 48-49. Petitioners contend that the IJ mischaracterized the 2007 Report and ignored this crucial information. The record reflects, however, that the IJ relied upon more evidence than just the 2007 Report in rejecting the pattern or practice claim, and petitioners have made no showing that the IJ's numerous findings of fact concerning the treatment of gays in Ukraine lack support in the administrative record. Moreover, other than relying upon portions of the 2007 Report, petitioners do not point to evidence in this record that would compel a reasonable factfinder to conclude that any persecution of homosexuals in Ukraine is "systemic, pervasive, or organized." Lie, 396 F.3d at 537 (quotation marks omitted).

Petitioners ask this Court to take judicial notice of the 2009 State Department Report on Ukraine, which is not part of the administrative record. They contend that this more recent report reflects a "dramatic rise in violence towards homosexuals in the Ukraine … as well as the government and security forces complicity in the violence." Petitioners' Br. at 49. It is settled that "courts reviewing the determination of an administrative agency must approve or reject the agency's action purely on the basis of the reasons offered by, and the record compiled before, the agency itself." Berishaj v. Ashcroft, 378 F.3d 314, 330 (3d Cir. 2004). Petitioners do not state that they have filed a motion to reopen with the BIA based on changed country conditions in Ukraine. Further,

12

they have not sought a remand of this matter on the ground that the agency record before this Court is now stale, nor has the government expressed the view that the record is stale. Under the circumstances, petitioners have not shown that taking judicial notice of the 2009 Report would be appropriate. See Ambartsoumian v. Ashcroft, 388 F.3d 85, 94 (3d Cir. 2004) (declining to take judicial notice of subsequent State Department Reports under similar circumstances); see also Wong, 539 F.3d at 234 n.4 ("Although other courts of appeals have taken judicial notice of new country reports released after a final agency determination, we have declined to do so.") (citation omitted).

In sum, the IJ properly concluded that petitioners failed to establish their eligibility for asylum, either based on a showing of past persecution or a well-founded fear of future persecution. It follows that petitioners cannot satisfy the more demanding standard of proof that governs claims for withholding of removal. See Yu v. Att'y Gen., 513 F.3d 346, 349 (3d Cir. 2008). Finally, because petitioners did not exhaust a challenge to the IJ's denial of CAT relief before the BIA, this Court lacks jurisdiction to review their CAT claims. See 8 U.S.C. § 1252(d)(1); Lin v. Att'y Gen., 543 F.3d 114, 122 (3d Cir. 2008).

III.

We have considered petitioners' remaining arguments but find them unpersuasive. For the foregoing reasons, we will deny the petitions for review.

13