**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4305
_____

ABDO MUSSED ALI AL SAIDI,
a/k/a Abdo M. Alseidi,
a/k/a Abdo Mosied Al Seidi,
a/k/a Abdo Saudn,
a/k/a Abdo Mussad Ali Alssaydi

v.

ATTORNEY GENERAL OF THE UNITED STATES

ABDO MUSSED ALI AL SAIDI,
Petitioner
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(A027-468-482)
Immigration Judge: Honorable Annie S. Garcy
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 2, 2011

Before: FUENTES VANASKIE and ROTH, Circuit Judges

(Opinion filed: July 14, 2011)
_____

OPINION
_____

PER CURIAM.

1

Abdo Mussed Ali Al Saidi ("Saidi") petitions for review of a final order of removal entered by the Board of Immigration Appeals ("BIA"). We will deny the petition for review.

I.

Saidi, a native and citizen of Yemen, entered the United States in 1986 on a non-immigrant visa for business and overstayed the visa's short term. In 1988, the former Immigration and Naturalization Service ("INS") approved a visa petition for alien relative filed on Saidi's behalf by his father, a naturalized United States citizen. Saidi's father died, however, before the INS adjudicated Saidi's application to adjust his status to lawful permanent resident. In 1997, the INS approved another visa petition for alien relative, this one filed on Saidi's behalf by his wife, a lawful permanent resident. In 2003, Saidi applied to adjust his status based on this latest alien-relative petition.

Saidi thereafter began a series of encounters with the criminal justice system. In 2004, he pled guilty in Maryland to possession and sale of unstamped cigarettes. Also in 2004, he pled guilty in New York to criminal possession of a forged instrument in the first degree. In 2006, Saidi pled guilty to another charge in New York, apparently a tax-related offense based on possessing or transporting unstamped cigarettes.

In 2006, the Department of Homeland Security ("DHS") notified Saidi that it had denied his latest application to adjust status because he failed to submit requested evidence regarding the disposition of his criminal offenses and his registration with the National Security Entry/Exit Registration System. Saidi was then arrested in New York

2

in 2006 on new charges, which prompted the DHS to take Saidi into custody and initiate these removal proceedings.[1] After two changes of venue, the matter was heard before an Immigration Judge ("IJ") in Newark, New Jersey. Saidi conceded removability for overstaying his visa, and he applied for asylum, withholding of removal, and Convention Against Torture ("CAT") relief. Saidi also submitted an application to adjust status based on his wife's approved alien-relative petition, and he sought a waiver of inadmissibility in light of his criminal convictions.

Saidi premised his applications for relief upon a claim that he fears future persecution in Yemen because he believes that the government will impute a negative political opinion to him (i) for having lived in the United States, and (ii) due to his association with his brother, who was murdered in Yemen in 2008 approximately two months after returning from the United States. Saidi maintains that security or police officers conspired to murder his brother, who allegedly had expressed anti-government political views, and Saidi contends that he is similarly situated to his brother.

The IJ denied relief, concluding that Saidi failed to provide sufficient evidence to establish the motive behind, and his reasons for fearing persecution due to, his brother's murder. While Saidi claimed that the murder amounted to persecution of his brother, the IJ noted that a newspaper article in the record reflects that Saidi's brother was not known

---

[1] Saidi posted a bond and was released, following which he was charged in Florida in 2008 with operating a gambling house, and was arrested in New Jersey, also in 2008, allegedly for possessing unstamped cigarettes subject to taxation. Saidi was returned to the DHS's custody in January 2009.

as a political opponent of the government, that there is no evidence that his brother was politically active, and that his brother, in fact, was killed during an armed robbery. The IJ observed that Saidi produced no evidence from family in Yemen, including his brother's widow, and no objective evidence to confirm that his brother was politically active, or that his family is in danger in Yemen. The IJ added that there is no evidence that the people whom Saidi fears are part of a group that the government is unable or unwilling to control, and indeed the government prosecuted and convicted two men for their role in the murder of Saidi's brother. The IJ also denied relief from removal insofar as Saidi cited generally poor country conditions in Yemen. In addition, the IJ denied CAT relief upon finding no evidence that Saidi more likely than not would face torture by or with the acquiescence of government officials.

Finally, the IJ declined to address Saidi's application to adjust his status, observing that Saidi, through counsel, withdrew the application during a hearing on May 21, 2009, in light of unresolved criminal charges pending against him. The IJ also noted that Saidi presented no evidence at the merits hearing to support the adjustment application, thereby effectively abandoning it. The IJ ordered removal to Yemen.

Saidi filed a post-judgment motion to reopen proceedings, arguing that the IJ should consider his application to adjust status "because [Saidi] now has a trial scheduled for October 2009, during which any inadmissibility issues will be resolved." A.R. at 51. The IJ referred the motion to reopen to the BIA in light of Saidi's pending appeal.

The BIA adopted and affirmed the IJ's merits decision, and denied the motion to

4

reopen. The BIA found that Saidi failed to show past persecution, failed to establish that his brother was killed due to a statutorily protected ground, and failed to show that he faces future harm. The BIA added that Saidi failed to demonstrate that the government would be unable or unwilling to protect him from harm, particularly in light of evidence that two individuals responsible for killing his brother were arrested, and that Saidi's family members have visited Yemen without incident.

The BIA also rejected Saidi's argument that the IJ erred in failing to consider his application to adjust status, agreeing that the application had been withdrawn. Finally, the BIA denied the motion to reopen, concluding that Saidi failed to present any material evidence that was not previously available or could not have been presented at the time of the merits hearing. Saidi timely filed a petition for review in this Court.

II.

We have jurisdiction under 8 U.S.C. § 1252(a)(1). "[W]hen the BIA both adopts the findings of the IJ and discusses some of the bases for the IJ's decision, we have authority to review the decisions of both the IJ and the BIA." Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004). "We apply substantial evidence review to agency findings of fact, departing from factual findings only where a reasonable adjudicator would be compelled to arrive at a contrary conclusion." Mendez-Reyes v. Att'y Gen., 428 F.3d 187, 191 (3d Cir. 2005). We "uphold the findings of the [agency] to the extent that they are supported by reasonable, substantial and probative evidence on the record considered as a whole[.]" Kayembe v. Ashcroft, 334 F.3d 231, 234 (3d Cir. 2003). Our review of

the BIA's denial of a motion to reopen is for abuse of discretion, "mindful of the 'broad' deference that the Supreme Court would have us afford." Lu v. Ashcroft, 259 F.3d 127, 131 (3d Cir. 2001). Saidi must show that the BIA's decision to deny his motion to reopen was arbitrary, irrational, or contrary to law. See Shardar v. Att'y Gen., 503 F.3d 308, 311 (3d Cir. 2007).

Saidi first argues that the IJ and the BIA erred in refusing to address the merits of his application to adjust status. Saidi contends that he is the beneficiary of his wife's approved visa petition, and while he acknowledges that he "also requires a waiver under INA Section 245(i) (due to his manner of entry) and a waiver for criminal convictions in order to adjust status," Petitioner's Br. at 7, Saidi claims that he is prima facie eligible to adjust, and that the IJ erred in deeming his application withdrawn. Saidi suggests that he "never intended" to withdraw the application, id. at 8, and that "at a bare minimum … his counsel *believed*" that the adjustment application "was still before the [IJ]." Id. at 9-10.

Substantial evidence supports the finding that the adjustment application was withdrawn. Saidi, through his counsel, expressly informed the IJ during hearings conducted prior to the merits hearing that he would not pursue the application to adjust status. Furthermore, even if Saidi might have been confused about the status of his adjustment application prior to the merits hearing, he failed to present any argument or evidence at the merits hearing in support of the application, and he did not seek a continuance to determine whether the then-pending criminal charges would render him ineligible to adjust status. Moreover, Saidi raised no objection when the IJ stated at the

6

conclusion of the merits hearing that a decision would be forthcoming regarding the asylum application, and that Saidi would be removed from the United States if relief were denied because his "application to adjust status has been . . . withdrawn." A.R. at 271. This record amply supports the determination that the application was withdrawn.[2]

Saidi alternatively argues that the BIA erred in denying his motion to reopen so that he could pursue the adjustment application. This argument, however, is premised largely upon the contention that Saidi never actually withdrew the adjustment application. As discussed, we cannot disturb the finding that it was withdrawn. Furthermore, an alien seeking to reopen proceedings bears the burden to present evidence that "is material and was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 1003.2(c)(1). As the BIA observed, Saidi presented no such evidence; rather, he merely noted that he had a trial scheduled, which he vaguely suggested would resolve his "inadmissibility issues." We cannot conclude on this record that the BIA abused its discretion in refusing to reopen the removal proceedings.

Finally, Saidi argues that the IJ and the BIA erred in rejecting his applications for

---

[2] Saidi "concedes that [the portions of the administrative record cited by the BIA], standing alone, would seem to suggest that [he] 'withdrew' his request for adjustment of status," Petitioner's Br. at 10, but he argues that "other relevant portions" of the record "suggest otherwise." Id. There is, however, no indication that the BIA failed to consider the record as a whole; rather, the BIA (and the IJ) simply rendered a finding that Saidi disagrees with. As mentioned, this Court will not disturb the agency's finding unless the administrative record *compels* a contrary finding. See Mendez-Reyes, 428 F.3d at 191. Saidi clearly has not made this showing.

asylum and withholding of removal.[3] He contends that he testified credibly regarding his brother's murder, and that his evidence established that he has a well-founded fear that he will meet the same fate as his brother if he returns to Yemen. We discern no error.

Saidi did not establish that his brother was persecuted in Yemen on account of a statutorily protected ground. As the BIA noted, the record indicates that his brother's murder occurred during an armed robbery, and two of the perpetrators were apprehended and convicted. Saidi points to no objective evidence that would reasonably connect his fear of returning to Yemen to his brother's death, or indeed that would connect his fear to any of the alleged mistreatment that he claims has befallen those who have returned to Yemen after living in the United States. Furthermore, Saidi offers no argument on appeal to rebut the findings that (i) he failed to show that the government in Yemen would be unable or unwilling to protect him from harm, and (ii) that his similarly situated family members have been unharmed in Yemen. This record supports the denial of Saidi's application for asylum. "Because withholding of removal carries a higher burden of proof than asylum, the request for withholding was properly denied, as well." Chen v. Att'y Gen., -- F.3d --, 2011 U.S. App. LEXIS 5358, at *14 (3d Cir. Mar. 18, 2011).

III.

For the foregoing reasons, we will deny the petition for review.

---

[3] We agree with respondent that Saidi has waived his CAT claim on appeal inasmuch as he makes only passing reference to the claim in his opening brief without providing any substantive argument in support. See Lie v. Ashcroft, 396 F.3d 530, 532 n.1 (3d Cir. 2005). Consequently, we do not discuss the CAT claim further.